1  STEVEN H. FELDERSTEIN (State Bar No. 056978)
   PAUL J. PASCUZZI (State Bar No. 148810)
2  JOAN S. HUH (State Bar No. 225724)
   FELDERSTEIN FITZGERALD
3  WILLOUGHBY & PASCUZZI LLP
   400 Capitol Mall, Suite 1450
4  Sacramento, CA 95814
   Telephone: (916) 329-7400
5  Facsimile: (916) 329-7435

6  Attorneys for the California Public Employees'
   Retirement System

7

8              UNITED STATES BANKRUPTCY COURT

9               EASTERN DISTRICT OF CALIFORNIA

10                   SACRAMENTO DIVISION

11 In re:                          CHAPTER 9 CASE

12 CITY OF VALLEJO,                CASE NO. 08-26813-A-9
   CALIFORNIA,
13                                 DC No.: OHS-4
                 Debtor.
14                                 Date:   February 3, 2009
                                   Time:   9:00 a.m.
15                                 Crtrm:  28

16

17

18

19    **OBJECTION BY CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM TO
       THE CITY OF VALLEJO'S MOTION FOR APPROVAL OF REJECTION OF
20                    COLLECTIVE BARGAINING AGREEMENTS**

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

    A.    CalPERS Administers Public Pension and Health Benefits for the City's
           Union Employees ................................................................................... 3

           1.    The Public Employees' Medical and Hospital Care Act (PEMHCA) ........ 5

           2.    The Public Employees' Retirement Law (PERL) ....................................... 6

    B.    Statutory Obligations of the City in Contracting with CalPERS ............................ 6

    C.    Statutory Termination Procedures for the City's CalPERS Contracts .................... 7

           1.    Termination of a CalPERS Retirement Plan Contract ................................ 7

           2.    Termination of a CalPERS Health Benefits Contract ................................ 8

DISCUSSION ............................................................................................................... 9

    A.    The City's CalPERS Contracts Cannot be Implicitly Rejected Through the
           City's 11 U.S.C. § 365 Rejection of its Collective Bargaining Agreements .......... 9

    B.    Rejection of the CBAs is Not Preclusive of Any Subsequent Attempt by
           the City to Reject the CalPERS Contracts ............................................................ 12

CONCLUSION ........................................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*Alley v. Resolution Trust Corp.*
  299 U.S. App. D.C. 363 (1993) ....................................................................17

*Betts v. Board of Administration*
  21 Cal. 3d 859 (1978) ..............................................................................11

*Board of Regents v. Roth*
  408 U.S. 564, 92 S. Ct. 2701 (1972)..........................................................11

*Board of Retirement of the Santa Barbara County Employees Retirement System v. Santa Barbara County Grand Jury*
  58 Cal. App. 4th 1185 (1997) ...................................................................4

*Brown v. Felsen*
  442 U.S. 127 (1979)...................................................................................14

*California Ass'n of Prof'l Scientists v. Schwarzenegger*
  137 Cal. App. 4th 371 (2006) ..............................................................3, 11

*Carman v. Alvord*
  31 Cal. 3d 318 (1982) ..............................................................................11

*City of Oakland v. Pub. Employees' Retirement Sys.*
  95 Cal. App. 4th 29 (2002)....................................................................3, 4

*Feinstein v. Lewis*
  477 F. Supp. 1256 (S.D.N.Y. 1979).....................................................13, 17

*Garcia v. Mortimer*
  704 F. Supp. 984 (N.D. Cal. 1988) ...........................................................11

*Grogan v. Garner*
  498 U.S. 279, 112 L. Ed. 2d 755, 111 S. Ct. 654 (1991) ...........................14

*In re Cedar Rapids Meats, Inc.*
  117 B.R. 448 (Bankr. N.D. Iowa. 1990) ....................................................10

*In re County of Orange*
  179 B.R. 185 (Bankr. C.D. Cal. 1995) .......................................................14

*In re Gardinier, Inc.*
  831 F.2d 974 (11th Cir. 1987)....................................................................12

*In re Paine*
  283 B.R. 33 (9th Cir. BAP 2002)..........................................................14, 15

*In re Philip Services Corp.*
  310 B.R. 802, 808 (Bankr. S.D. Tex. 2004)...............................................14

*In re Sanitary and Improvement Dist.*
  98 B.R. 970 (Bankr. D. Neb. 1989) ...........................................................16

OBJECTION BY CALPERS TO THE CITY OF VALLEJO'S
MOTION FOR APPROVAL OF REJECTION OF
COLLECTIVE BARGAINING AGREEMENTS

*In re Wright Air Lines, Inc.*
  44 B.R. 744 (Bankr. N.D. Ohio 1984) ...................................................................... 10

*Legislature v. Eu*
  54 Cal. 3d 492 (1991) ............................................................................................... 11

*Memphis Light, Gas and Water Division v. Craft*
  436 U.S. 1, 98 S. Ct. 1554 (1978) ............................................................................ 11

*NLRB v. Bildisco & Bildisco*
  465 U.S. 513 (1983) ............................................................................................. 2, 15

*Owens v. Kaiser Found. Health Plan*
  244 F.3d 708 (9th Cir. 2001) ..................................................................................... 14

*Pierson v. Continental Casualty Co.*
  2000 U.S. Dist. LEXIS 21380 (C.D. Cal. 2000) ....................................................... 17

*Rein v. Providian Fin. Corp.*
  252 F.3d 1095 (9th Cir. 2001) ............................................................................. 13, 14

*Robi v. Five Platters, Inc.*
  838 F.2d 318 (9th Cir. 1988) ..................................................................................... 15

*Ropico, Inc. v. City of New York*
  425 F. Supp. 970 (S.D.N.Y. 1976) ........................................................................... 16

*Rose v. Long Island Railroad Pension Plan*
  828 F.2d 910 (2d Cir. 1987) ................................................................................. 3, 13

*Roy v. Teachers Ins. and Annuity Assoc.*
  878 F.2d 47 (2d Cir. 1989) ........................................................................................ 13

*Thomas v. City of Los Angeles*
  676 F. Supp. 976 (C.D. Cal. 1987) ........................................................................... 11

*Thorning v. Hollister School Dist.*
  11 Cal. App. 4th 1598 (1992) .................................................................................... 11

*Truck Drivers Local 807 v. Carey Transportation, Inc.*
  816 F.2d 82 (2nd Cir. 1986) ........................................................................................ 9

*United Steelworkers of America v. Unimet Corp. (In re Unimet Corp.)*
  842 F.2d 879 (6th Cir. 1988) ..................................................................................... 10

**STATUTES AND CONSTITUTIONS**

11 U.S.C. § 1113 ....................................................................................................... 9, 10

11 U.S.C. § 365 ............................................................................................ 9, 10, 14, 15

11 U.S.C. § 903 ...................................................................................................... passim

11 U.S.C. § 904 ...................................................................................................... passim

OBJECTION BY CALPERS TO THE CITY OF VALLEJO'S
MOTION FOR APPROVAL OF REJECTION OF
COLLECTIVE BARGAINING AGREEMENTS

| | | |
|---|---|---|
| 1 | 11 U.S.C. § 943 | 16 |
| 2 | 11 U.S.C. § 944 | 16 |
| 3 | 29 U.S.C. § 1002 | 3 |
| 4 | 29 U.S.C. § 1003 | 3 |
| 5 | Bankruptcy Act, Chapter IX, Section 83 | 16 |
| 6 | U.S. Constitution<br>    Tenth Amendment | 12 |
| 7<br>8 | California Constitution<br>    Article XVI | 4 |
| 9 | California Government Code § 20000 | 3, 6 |
| 10 | California Government Code § 20001 | 6 |
| 11 | California Government Code § 20002 | 6 |
| 12 | California Government Code § 20120 | 6 |
| 13 | California Government Code § 20460 | 6, 8 |
| 14 | California Government Code § 20471 | 6 |
| 15 | California Government Code § 20487 | 14, 17 |
| 16 | California Government Code § 20532 | 6 |
| 17 | California Government Code § 20535 | 6 |
| 18 | California Government Code § 20536 | 6 |
| 19 | California Government Code § 20570 | 7, 17, 18 |
| 20 | California Government Code § 20572 | 7 |
| 21 | California Government Code § 20574 | 6 |
| 22 | California Government Code § 20577 | 6, 8, 11 |
| 23 | California Government Code § 22750 | 3 |
| 24 | California Government Code § 22751 | 5 |
| 25 | California Government Code § 22892 | 7 |
| 26 | California Government Code § 22922 | 5, 7 |
| 27 | California Government Code § 22938 | 8 |
| 28 | California Government Code § 22939 | 8 |

2 CCR § 599.515 ........................................................................................7, 8, 17, 18

Federal Rule of Bankruptcy Procedure 6006 ................................................................10

Federal Rule of Bankruptcy Procedure 9014 ................................................................10

H.R. Rep. No. 533, 1974 U.S. Code Cong. & Ad. News) ..............................................14

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 397-398 (1977) .......................................12

**OTHER AUTHORITIES**

6 Collier on Bankruptcy § 903.02[1] ............................................................................16

6 Collier on Bankruptcy § 903.02[3] ............................................................................14

6 Collier on Bankruptcy § 904.01 .................................................................................16

6 Collier on Bankruptcy § 904.02[1][a] ........................................................................16

California Public Employees' Retirement System, Office of Public Affairs, Facts
    at a Glance:  General (2008) ...............................................................................3, 5

The California Pension Protection Act of 1992 (Proposition 162) ...................................4

Restatement (Second) of Judgments § 27 ......................................................................15

Richard Krolak, Public Employee Post-Employment Benefits Commission, Public
    Employees' Medical And Hospital Care Act (PEMHCA) And Contracting
    Agencies (2007) ......................................................................................................5

California Public Employees' Retirement System ("CalPERS"), a party in interest, hereby files this objection to the City of Vallejo's ("City") Motion for Approval of Rejection of Collective Bargaining Agreements ("Motion").

**INTRODUCTION**

In its Motion, the City alleges it is "taking an important step" toward resolving its financial difficulties by rejecting collective bargaining agreements ("CBAs") entered into with the Vallejo Police Officers' Association ("VPOA"), International Association of Firefighters Local 1186 ("IAFF"), and International Brotherhood of Electrical Workers, Local 2376 ("IBEW"), and the Confidential, Administrative, Managerial and Professional Association of Vallejo ("CAMP") (collectively, "Unions"). *See* Memorandum of Points and Authorities in Support of Motion for Approval of Rejection of Collective Bargaining Agreements ("MPA") pp. 1-2. The "cost of labor is by far the largest General Fund expenditure the City incurs in each fiscal year." Decl. of Susan Mayer in Supp. of Mot. for Approval of Rejection of Collective Bargaining Agreements ("Mayer Declaration"), p. 7. Accordingly, the City intends to determine "an appropriate adjustment for each of its debts" in bankruptcy. Mayer Declaration, p. 7.

Although CalPERS is not a party to the CBAs, CalPERS is a party to separate retirement and health benefits contracts with the City that are required by the CBAs the City seeks to reject. As California's public employee retirement system is shaped by the legislative process, the City's obligations to CalPERS are derived from both contract and the California Government Code. At the time of the filing of its Motion, the City has not taken any state statutory actions to terminate or modify its contracts with the CalPERS system.

CalPERS files this objection to the Motion to the extent that it seeks to implicitly reject the City's CalPERS health and retirement contracts as part of rejection of the CBAs. Any attempt to reject the CalPERS retirement and health benefits contracts must be by separate motion with due notice of the specific relief sought to the affected parties. Because California municipal employees are accorded certain court-mandated constitutional rights in employment terms, the City's Motion must comply with due process considerations.

In the event that the Court authorizes rejection of the CBAs, any rulings made by the

Court do not apply to any subsequent attempt by the City to reject the CalPERS contracts to the extent they constitute executory contractual obligations. The Unions and CalPERS are not the same parties or parties in privity. An attempted rejection of the CalPERS Contracts would raise different issues since the *NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1983) collective bargaining agreement rejection standards, which the City contends are controlling in its Motion, are not applicable to a municipality's contracts entered into with a state retirement system, expressly governed and regulated by state law under principles of federalism. CalPERS is not a party to the CBAs, which is all the City can be authorized to reject by its Motion.

## BACKGROUND

The City's CBAs each provide that the City shall contract with CalPERS for retirement and health benefits.

The City's July 1, 2000 labor agreement with the VPOA at Section 22 provides that the City "shall provide to all employees and eligible dependents, and to retiree-annuitants, the PERS Health Benefits Program." Further, the labor agreement with the VPOA at Section 27 requires the City to provide various CalPERS retirement programs. *See* Exhibits A & B in Support of Declaration of Debora Boutte in Support of Motion for Approval of Rejection of Collective Bargaining Agreements ("Boutte Declaration"), Exhibit A (Docket No. 77).

The City's July 1, 2000 agreement with the IAFF at Section 13 requires the City to provide "to all employees and eligible dependents and to all eligible retiree-annuitants the PERS Health Benefits Program." Further, the agreement with the IAFF at Section 39 requires the City to provide to all employees the CalPERS retirement plan. *See* Exhibits A & B in Support of the Boutte Declaration, Exhibit B.

The City's July 1, 1998 agreement with the IBEW at Section 3.2 requires the City to provide "to all employees and eligible dependents and to all eligible retiree-annuitants the PERS Health Benefits Program." Further, the contract with the IBEW at Section 3.1 requires the City to participate in the CalPERS retirement plan for members of the IBEW. *See* Exhibits C & D in Support of the Boutte Declaration, Exhibit C.

The City's July 1, 1999 agreement with the CAMP at Section 7.1 requires the City to

continue to offer "all eligible employees, eligible dependents of employees, eligible retiree-annuitants, and eligible dependents of retiree-annuitants the health benefits under the Public Employees Medical and Hospital Care Act." Further, the agreement with the CAMP at Section 7.2 requires the City to continue to participate in the CalPERS retirement plan. *See* Exhibits C & D in Support of the Boutte Declaration, Exhibit D.

Pursuant to the above agreements, the City entered into contracts and contract amendments with the CalPERS Board of Administration for the City's participation in CalPERS, and adopted multiple resolutions electing to be subject to the Public Employees' Medical and Hospital Care Act.

A.    **CalPERS Administers Public Pension and Health Benefits for the City's Union Employees**

The Public Employees' Retirement Law (California Gov. Code, § 20000 *et seq.*) establishes a retirement system for certain state and local government employees.[1]  *City of Oakland v. Pub. Employees' Retirement Sys.*, 95 Cal. App. 4th 29, 33 (2002).  The Public Employees' Medical and Hospital Care Act (California Gov. Code § 22750 *et seq.*) provides health benefit plans for eligible state, school and local government employees.

The California Legislature established CalPERS in 1931, and it became operational in 1932, when it began providing California state employees retirement benefits.  California Public Employees' Retirement System, Office of Public Affairs, Facts at a Glance:  General (2008).[2]  CalPERS provides pension fund and healthcare services for approximately 1.5 million California public employees, retirees, and their families.  *Id.*  A "state employee generally becomes a member of the Public Employees' Retirement System . . . 'upon his or her entry into employment.'"  *California Ass'n of Prof'l Scientists v. Schwarzenegger*, 137 Cal. App. 4th 371, 375 (2006).  Local government employers may contract with CalPERS to provide pension and

---

[1]   The administration of California's public retirement system is exempt from the Employee Retirement Income Security Act (ERISA) based on principles of federalism, especially due to the fact that state public employee retirement systems are shaped, in part, by the legislative process. *See Rose v. Long Island Railroad Pension Plan*, 828 F.2d 910 (2d Cir. 1987).  This exemption of governmental plans from ERISA is codified in 29 U.S.C. §§ 1002(32), 1003(b)(1).

[2]   Available at http://www.calpers.ca.gov/eip-docs/about/facts/general.pdf.

retirement benefits to their employees. Members of CalPERS are grouped according to member classifications miscellaneous (e.g., local miscellaneous for city employees) and safety (local fire, local police, local safety for city employees) and the benefit levels available to the various member classifications are defined by statute. Each contracting agency's contract makes specific the benefit level being provided by that agency to each of its various member classifications.

Proposition 162, which gave the CalPERS Board of Administration ("CalPERS Board") exclusive authority over the administration and investment of pension funds, was approved by voters in 1992. *Id.* In enacting Proposition 162, the electorate in California amended article XVI, section 17 of the California Constitution, to read, in part:

> Notwithstanding any other provisions of law or this Constitution to the contrary, the retirement board of a public pension or retirement system shall have **plenary** authority and fiduciary responsibility for investment of moneys and administration of the system, subject to . . . the following: [P] . . . The retirement board shall . . . have sole and exclusive responsibility to administer the system in a manner that will assure prompt delivery of benefits and related services to the participants and their beneficiaries.

*Board of Retirement of the Santa Barbara County Employees Retirement System v. Santa Barbara County Grand Jury*, 58 Cal. App. 4th 1185, 1192 (1997) (emphasis added). Proposition 162 serves to prevent the legislative and executive branches from "raiding" pension funds to balance the state budget. *Id.* at 1193.

The CalPERS Board is thus governed by the California Constitution and statutes, such as Cal. Const., art. XVI, § 17 subd. (b), which mandates that the CalPERS Board ensure the rights of CalPERS members and retirees to their full earned benefits.[3] *City of Oakland*, 95 Cal. App. 4th at 29, 39. Accordingly, the CalPERS Board has institutional expertise in investment decisions and making determinations about the classifications of employees based on tasks and duties, among other subjects. *Id.* at 40 (explaining that "local safety" members, as opposed to "miscellaneous" members receive greater retirement benefits).

---

[3] The ballot pamphlet accompanying Proposition 162 explained that pension system boards should give "highest priority" to providing benefits to members and their beneficiaries. *City of Oakland*, 95 Cal. App. 4th at 54.

In addition, CalPERS itself works as a multiple-employer defined benefit retirement plan, and provides retirement benefits based on a member's years of service, age, and highest compensation.[4] Further, the CalPERS health benefits program offers members and contracting employers health maintenance organization (HMO) plans, preferred provider organization (PPO) plans, and special health plans for members who belong to specific employee associations. California Public Employees' Retirement System, Office of Public Affairs, Facts at a Glance: General (2008).[5]

### 1. The Public Employees' Medical and Hospital Care Act (PEMHCA)

To participate in the health benefits program under the Public Employees' Medical and Hospital Care Act ("PEMHCA"), public agencies are required to contract with CalPERS, which acts as administrator. *See* Cal Gov't Code § 22922. A public agency becomes a contracting agency upon the proper and timely filing with CalPERS of a "resolution of its governing body electing to be so subject." Cal. Gov't Code § 22922.

The purpose of PEMHCA is to:

(a)    Promote increased economy and efficiency in state service.
(b)    Enable the state to attract and retain qualified employees by providing health benefit plans similar to those commonly provided in private industry.
(c)    Recognize and protect the state's investment in each permanent employee by promoting and preserving good health among state employees.

Cal. Gov't Code § 22751. The City is one of many public agencies participating in the PEMHCA program for access to group health insurance.

By contracting with CalPERS, public agencies, such as the City, have access to relatively stable premium pricing by accepting the benefit designs, provider networks, and premium structures set by CalPERS. *See* Richard Krolak, Public Employee Post-Employment Benefits Commission, Public Employees' Medical And Hospital Care Act (PEMHCA) And Contracting Agencies (2007).[6]

---

[4] Retirement benefits are calculated using the years of service multiplied by a benefit factor for an individual's age at retirement. The resulting percentage is multiplied by the highest average monthly compensation. The highest average monthly compensation is based on 12 or 36 consecutive months, depending on the contract provisions.
[5]    Available at http://www.calpers.ca.gov/eip-docs/about/facts/general.pdf.
[6]    Available at http://www.pebc.ca.gov/images/files/backgrounder.pdf.

2.      **The Public Employees' Retirement Law (PERL)**

The City also is a contracting agency with the CalPERS Board under the Public Employees' Retirement Law ("PERL"). Cal Gov't Code § 20000 et seq.

Any public agency may participate in this retirement system by contract entered into by the agency's governing body, and the CalPERS Board. Cal. Gov't Code § 20460. Approval of the contract "shall be by ordinance adopted by the affirmative vote of a majority of the members of the governing body, not less than 20 days after the adoption of the resolution of intention, or by ordinance adopted by a majority vote of the electorate of the public agency voting thereon." Cal. Gov't Code § 20471.

The purpose of PERL is to "effect economy and efficiency in the public service by providing a means whereby employees who become superannuated or otherwise incapacitated may, without hardship or prejudice, be replaced by more capable employees, and to that end provide a retirement system consisting of retirement compensation and death benefits." Cal. Gov't Code § 20001. The Public Employees' Retirement System is "a unit of the State and Consumer Services Agency." Cal. Gov't Code § 20002. Management and control of this retirement system is vested in the CalPERS Board of Administration. Cal. Gov't Code § 20120.

**B.      Statutory Obligations of the City in Contracting with CalPERS**

Under PERL, a contracting agency with CalPERS is required to make contributions for employees in amounts as recommended by CalPERS' actuary, and approved by its Board. Cal. Gov't Code § 20532. A contracting agency also is responsible to CalPERS for the expenses of determining the approximate and actual contributions, as well as the expenses of administering the CalPERS system. Cal. Gov't Code §§ 20535 and 20536. Because the retirement system contains funding requirements for contracting agencies, a "terminated agency shall be liable to the system for any deficit in funding for earned benefits, as determined pursuant to section 20577, interest at the actuarial rate from the date of termination to the date the agency pays the system, and for reasonable and necessary costs of collection, including attorney's fees." Cal. Gov't Code § 20574.

Under PEMHCA, the employer contribution of a contracting agency toward health

benefits generally is equal for both employees and annuitants.  Cal. Gov't Code § 22892.  The contracting agency's contribution levels are set forth in the resolution of its governing body, adopted by a majority vote, and filed with CalPERS.  Cal. Gov't Code § 22922.  A contracting agency's contributions for health care premiums are due by the tenth day of each month.  2 CCR § 599.515(d)(1).  Unlike public pension benefits, the health care plan benefits are paid for as incurred (pay-as-you-go) and do not contain minimum funding requirements.

In its List of Creditors Holding 20 Largest Unsecured Claims filed on May 23, 2008, the City discloses its contingent liabilities for health care and pension benefits as its largest claims.  The City stated that it has an actuarial liability of $135,396,000 for potential future retiree health benefits, and $83,904,816 in unfunded pension plan benefits for defined benefit pension plans (Safety Plan of the City of Vallejo, and Miscellaneous Plan of the City of Vallejo) administered by CalPERS.[7]  True and correct copies of the City's List of Creditors Holding 20 Largest Unsecured Claims, and List of Creditors Holding 20 Largest Unsecured Retiree Health Benefit Claims are attached as **Exhibit "A"** to the Request for Judicial Notice in Support of Objection by California Public Employees' Retirement System to the City of Vallejo's Motion for Approval of Rejection of Collective Bargaining Agreements filed herewith.

C.     **Statutory Termination Procedures for the City's CalPERS Contracts**

1.     **Termination of a CalPERS Retirement Plan Contract**

California Government Code §§ 20570 and 20572 establish the exclusive means under California law of terminating a CalPERS retirement plan contract.  Under section 20570, a contracting agency may voluntarily terminate its CalPERS retirement plan contract by providing statutorily required notice in two steps.  The agency's governing body first adopts an ordinance or resolution to provide one year's notice to CalPERS of the intent to terminate the contract.  After the passage of one year, the agency's CalPERS contract is effectively terminated by an affirmative two-thirds vote by the members of the governing body of an ordinance or resolution terminating the contract.  Additionally, under section 20572, a contracting agency's CalPERS

---

[7]  The City later amended its list of 20 Largest Unsecured Claims to eliminate the $135,396,000 claim for potential future health benefits, and filed a List of Creditors Holding 20 Largest Unsecured Retiree Health Benefit Claims on August 29, 2008.

retirement plan contract may be involuntarily terminated upon the agency's failure to remit required contributions within thirty (30) days of CalPERS' demand. A contracting agency's CalPERS retirement plan contract may also be involuntarily terminated upon the agency's failure for three (3) months after demand to submit any information required for administration of this system with respect to the agency employees, or if the Board determines that the agency has ceased to exist. The CalPERS Board may terminate such contract by a resolution adopted by a majority vote of the CalPERS Board, which becomes effective sixty (60) days after mailing notice of the adoption of the resolution to the contracting agency by registered mail. Further, the contracting agency is responsible for interest assessed on delinquent contributions, plus costs and fees.

After termination, CalPERS merges the terminated agency's plan assets and liabilities into a single pooled account to provide for payment of benefits to all members of terminated plans. If the contracting agency's accumulated contributions credited to employees fall short of the actuarial equivalent required to pay benefits, then the contracting agency is liable for the shortfall. Cal. Gov't Code § 20577. If the contracting agency fails to pay the difference, CalPERS may reduce the benefits paid to the affected agency's retirees, beneficiaries and/or survivors accordingly. Finally, a public agency, whose previous contract for participation in the retirement system has terminated, may not enter into another CalPERS retirement plan contract within three (3) years of termination. Cal. Gov't Code § 20460.

To date, the City has not adopted an ordinance or resolution providing one year's notice of any intent to terminate the CalPERS retirement plan contract.

**2.     Termination of a CalPERS Health Benefits Contract**

California Government Code § 22938 establishes the means under California law for voluntary termination of a CalPERS health benefits contract. To do so, a contracting agency must adopt and file a resolution by a majority of its governing body no later than 60 days after CalPERS' annual announcement of health plan rates. 2 CCR § 599.515(e). If such a resolution is passed, the contracting agency's termination resolution becomes effective at the end of the contract year. 2 CCR § 599.515(e). Additionally, under California Government Code § 22939,

a contracting agency's CalPERS health benefits plan may be involuntarily terminated upon the agency's failure for three months to perform any act required by PEMCHA, Board rules or regulations, after CalPERS' issuance of a performance demand. Here, there is no indication that the City filed a termination resolution of its CalPERS health benefits contract within sixty days of June 2008 when health rates were announced. Thus, the City cannot terminate the health benefits contract until at the earliest, upon proper notice, for the 2010 year.

**DISCUSSION**

**A.      The City's CalPERS Contracts Cannot be Implicitly Rejected Through the City's 11 U.S.C. § 365 Rejection of its Collective Bargaining Agreements**

As discussed *supra*, the City's retirement and health benefits contracts with the CalPERS system (the "CalPERS Contracts") were established pursuant to the CBAs. The City has not taken any state statutory actions to terminate or modify its CalPERS Contracts.

In its Motion, the City contends that it is authorized to reject the CBAs as executory contracts because they are burdensome to the estate, and the balancing of the equities favor rejection. In support of its arguments, the City alleges that "the CBAs with the City's police and firefighters provide some of the highest compensation available in the surrounding communities. Compared to fifteen area cities, the salary, retirement, separation, health and medical benefits City police and firefighters receive under the CBAs rank at or near the top in every category." MPA at p. 20. However, 11 U.S.C. § 365 requires rejection of the entire executory contract or unexpired lease, and by proposing to reject the CBAs and all of their provisions, the City's Motion fails to identify the specific provisions it seeks to reject in its CBAs, causing CalPERS concern that the City may be implicitly attempting to reject the CalPERS Contracts.

Although easily distinguishable, a few debtor employers in chapter 11 cases have argued that they may employ 11 U.S.C. § 1113 (a narrowly-tailored provision for the rejection of chapter 11 CBAs) to reject their CBA and, at the same time, affect certain of the attendant health and employee welfare benefits conferred by their CBA.[8] In such cases, the debtor employers

---

[8]  During a chapter 11 reorganization, some debtor employers have attempted to utilize 11 U.S.C. § 1113 to reject a collective bargaining agreement, and the attendant health and retirement benefits thereto. For example, in *Truck Drivers Local 807 v. Carey Transportation, Inc.*, 816 F.2d 82, 86 (2nd Cir. 1986), the debtor employer sought to

expressly proposed a reduction in or termination of health and pension benefit contributions as necessary in arguing for a § 1113 rejection. Because these cases are distinguishable due to the inapplicability of § 1113 to chapter 9, to the extent that the City's Motion seeks to implicitly reject the CalPERS Contracts which are tied to the CBAs, the City's Motion should be denied for lack of notice.

Any proposed rejection of the CalPERS Contracts requires a separately noticed motion and hearing. Federal Rule of Bankruptcy Procedure 6006 requires that the other party to a contract that is the subject of a motion to reject under 11 U.S.C. § 365 be provided notice of the motion. Fed. R. Bankr. Proc. 6006; *see also* Fed. R. Bankr. Proc. 9014 (requiring that relief be requested by motion, and reasonable notice and opportunity for hearing to the party against whom relief is sought). The Motion states that the City is rejecting the CBAs with its unions, but nowhere in the Motion or the notice is there any mention of the CalPERS Contracts or their rejection. Providing CalPERS with the notice of the Motion to reject the CBAs without stating that the City is seeking relief against CalPERS, if that is the case, is not sufficient. If relief is being sought against CalPERS, the City's Motion must state that it is seeking rejection of the CalPERS Contracts and the basis therefor. *See e.g.*, *In re Wright Air Lines, Inc.*, 44 B.R. 744 (Bankr. N.D. Ohio 1984) (opining that the debtor's failure to specify in its application the "specific provisions" in the collective bargaining agreement from which the debtor seeks interim relief, does not meet 11 U.S.C. § 1113's notice requirements); *In re Cedar Rapids Meats, Inc.*, 117 B.R. 448, 449 (Bankr. N.D. Iowa 1990) (evaluating the debtor's request for 11 U.S.C. § 1113 interim relief from certain specified provisions, i.e., welfare benefits and pension contributions, in its collective bargaining agreements).

Importantly, California municipal employees, in particular, hold certain court-mandated

---

achieve labor savings by rejecting its collective bargaining agreements under 11 U.S.C. § 1113 in order to: (1) freeze wages, (2) reduce health and pension benefit contributions, (3) eliminate sick days, (4) modify overtime, (5) change scheduling rules, etc. As another example, in *United Steelworkers of America v. Unimet Corp. (In re Unimet Corp.)*, 842 F.2d 879, 885 (6th Cir. 1988), the debtor employer, whose only remaining obligation under the collective bargaining agreement was the payment of retiree health insurance premiums, moved to reject the collective bargaining agreement under § 1113 when negotiations with the retirees broke down. These chapter 11 cases suggest that § 1113 encompasses health and retirement benefits. However, these cases are distinguishable in that § 1113 does not apply in chapter 9, and the City, in its Motion at bar, has not expressly disclosed that any modifications to health and retirement benefits are a necessary component in the City's proposed rejection of the CBAs.

constitutional rights. As mentioned above, if the CalPERS retirement plan contract is terminated by virtue of rejection of the CBAs, such termination may affect the amount retirees receive, depriving those affected of their pension rights. *See* Cal. Gov't Code § 20577. This implicates due process requirements for the retirees because "public employment gives rise to certain obligations which are protected by the contract clause of the Constitution .... Such obligations include pension rights." *California Ass'n of Prof'l Scientists*, 137 Cal. App. 4th at 375. "[B]oth the federal and state contract clauses protect the vested pension rights of public officers and employees from unreasonable impairment." *Id.* at 382; *Legislature v. Eu*, 54 Cal. 3d 492, 528 (1991); *Betts v. Board of Administration*, 21 Cal. 3d 859, 863 (1978); *Carman v. Alvord*, 31 Cal. 3d 318, 325 (1982). These pension rights arising from California's explicit state policy extend to retirement health and welfare benefits as part of compensation under California law. That is, vested post-retirement health and welfare benefits which are fundamental to the elements of compensation for public employees, also are constitutionally protected from unreasonable impairment. *Thorning v. Hollister School Dist.*, 11 Cal. App. 4th 1598, 1607 (1992).

Public employees also may hold constitutionally-protected property interests in the terms and conditions of their employment, and such an interest triggers procedural due process considerations. A "public employee has a due process property right in continued employment only if the individual has a legitimate claim of entitlement to the position created by 'existing rules or understandings that stem from an independent source such as state law.'" *Garcia v. Mortimer*, 704 F. Supp. 984, (N.D. Cal. 1988) (*citing Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701 (1972)). In *Board of Regents*, the United States Supreme Court indicated that "property interests do not arise from the Constitution but 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Thomas v. City of Los Angeles*, 676 F. Supp. 976, 980 (C.D. Cal. 1987) (citations omitted). "Federal constitutional law, however, 'determines whether that interest rises to the level of a legitimate claim to entitlement protected by the Due Process Clause.'" *Thomas v. City of Los Angeles*, 676 F. Supp. at 980 (citing *Memphis Light, Gas and*

1     *Water Division v. Craft*, 436 U.S. 1, 9, 98 S. Ct. 1554 (1978)).

2        Further, there is no contention that the CalPERS Contracts are part of the CBAs such that

3 they are in fact one indivisible contract. *See e.g., In re Gardinier, Inc.*, 831 F.2d 974, 975 (11th

4 Cir. 1987). None of the parties have taken such a position in this case. Even if they did, the test

5 for treating several writings as one contract is not met here. *Gardinier*, 831 F.2d at 976

6 (explaining that in the composition of an executory contract, the court will look to (1) whether

7 the nature and purpose of the obligations differ; (2) whether the consideration for the obligations

8 is separate and distinct; and (3) whether the obligations of the parties are interrelated). The City

9 has not provided any notice to CalPERS that this particular issue was raised in its Motion.

10        In sum, without a proper motion or notice seeking to reject the CalPERS Contracts, the

11 City cannot implicitly reject the CalPERS Contracts by its Motion. Rejection or suspension of

12 the CBAs does not relieve the City of its statutory funding and termination obligations under the

13 CalPERS Contracts, which are separate and apart from the CBAs.

14 **B.**     **Rejection of the CBAs is Not Preclusive of Any Subsequent Attempt by the City to**
         **Reject the CalPERS Contracts**

15

16        Assuming arguendo that the Court authorizes the rejection of the CBAs, none of the

17 essential findings for such authorization would be entitled to preclusive effect as to any

18 subsequent attempt by the City to reject the CalPERS Contracts, to the extent that they constitute

19 executory contractual obligations.

20        This is true because the CalPERS Contracts fall within the purview of 11 U.S.C. §§ 903

21 and 904. These statutes, based on the Tenth Amendment, make it clear that bankruptcy law

22 cannot interfere with a state's control over its municipalities.[9] Section 903 recognizes that

23 during a chapter 9 bankruptcy case, there is a danger of too much federal court intervention in

24 the governmental affairs of a state municipality. House Report No. 95-595, 95th Cong., 1st

25 Sess. 397-398 (1977). Section 904 similarly underlines the need for a limitation on the

26 bankruptcy court's powers. House Report No. 95-595, 95th Cong., 1st Sess. 398 (1977).

27

28    [9] The Tenth Amendment of the Constitution provides that the powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively.

The State of California has a distinctive, centrally-managed, and actuarially-sound public employee pension and benefit scheme (PERL and PEMHCA), and Congress has opted to refrain from interfering with state and local government operations of employee benefit systems, mindful of principles of federalism. *See Roy v. Teachers Ins. and Annuity Assoc.*, 878 F.2d 47, 49 (2d Cir. 1989). In *Feinstein v. Lewis*, 477 F. Supp. 1256, 1261 (S.D.N.Y. 1979), the district court reviewed the legislative history of ERISA in reaching a determination that the governmental plans in question were exempt from ERISA coverage. The court noted that:

> Plans established by state and local governments are generally excluded from coverage under ERISA because of concerns of federalism. In a summary of the major provisions of a predecessor bill, Senator Lloyd Bentsen commented that: '**State and local governments must be allowed to make their own determination of the best method to protect the pension rights of municipal and state employees. These are questions of state and local sovereignty and the Federal Government should not interfere.**' 1 Legislative History of the Employee Retirement Income Security Act of 1974 220 (1976) (hereinafter cited as Legislative History)....In commenting on the fact that a provision including state and local public employee benefit plans under the ambit of the reporting and disclosure sections of H.R. 2 had been dropped from the final draft, Representative John H. Erlenborn stated that 'the Committee missed the opportunity . . . to foster honesty in government and to give Public employees the comprehensive protections and guarantees . . . deem(ed) vital to private employees." H.R.Rep. 93-553, at 44, U.S.Code Cong. & Admin.News, p. 4668 (emphasis added). See Id. at 9, 43. These discussions clearly demonstrate that Congress, in exempting governmental plans, was **concerned more with the governmental nature of public employees and public employers** than with the details of how a plan was established or maintained.

*Feinstein*, 477 F. Supp. at 1261-62 (emphasis added). The governmental nature of public benefit plans was emphasized in the legislative record detailing Congress' reluctance to interfere with the administration of public retirement plans:

> There are literally thousands of public retirement systems operated by towns, counties, authorities and cities in addition to the state and Federal plans. Eligibility, vesting and funding provisions are at least as diverse as those in the private sector with the added **uniqueness added by the legislative process**. For this reason the Committee is convinced that additional data and study is necessary before any attempt is made to address the issues of vesting and funding with respect to public plans.

*Rose v. Long Island*, 828 F.2d at 914 (emphasis added) (reviewing the report of the House

Committee on Education and Labor and citing H.R. Rep. No. 533, 1974 U.S. Code Cong. & Ad.

News at 4647).

Accordingly, the State of California has enacted legislation that prohibits a contracting agency's 11 U.S.C. § 365 unilateral rejection of contracts to which CalPERS is a party.[10]  Such legislation reflects the special need of state government and pension plans to pursue state law remedies to protect pensioners.  California Government Code § 20487 provides:

> Notwithstanding any other provision of law, no contracting agency or public agency that becomes the subject of a case under the bankruptcy provisions of Chapter 9 (commencing with Section 901) of Title 11 of the United States Code shall reject any contract or agreement between that agency and the board pursuant to Section 365 of Title 11 of the United States Code or any similar provision of law; nor shall the agency, without the prior written consent of the board, assume or assign any contract or agreement between that agency and the board pursuant to Section 365 of Title 11 of the United States Code or any similar provision of law.

*See* Cal. Gov't Code § 20487.  Such statutory protections for pension and benefit plans from unilateral rejection, as seen in ERISA distress termination provisions, are routinely respected in bankruptcy.  *See In re Philip Services, Corp.*, 310 B.R. 802, 808 (Bankr. S.D. Tex. 2004) (holding that ERISA's comprehensive set of rules to deal with underfunded pension plans govern in bankruptcy).

Claim and issue preclusion apply in bankruptcy.  *Brown v. Felsen*, 442 U.S. 127, 134-39 (1979); *Grogan v. Garner*, 498 U.S. 279, 285, 112 L. Ed. 2d 755, 111 S. Ct. 654 (1991); *see also In re Paine*, 283 B.R. 33, 39 (9th Cir. BAP 2002).  Claim preclusion generally requires that there be:  (1) parties either identical or in privity; (2) a judgment rendered by a court of competent jurisdiction; (3) a prior action concluded to final judgment on merits; and (4) the same claim or cause of action involved in both actions.  *Rein v. Providian Fin. Corp.*, 252 F.3d 1095, 1098 (9th Cir. 2001); *Owens v. Kaiser Found. Health Plan*, 244 F.3d 708, 713 (9th Cir. 2001); *see also In re Paine*, 283 B.R. at 39.

Issue preclusion generally requires that there be: (1) the same issue; (2) actually litigated and determined; (3) by a valid and final judgment; (4) as to which the determination is essential

---

[10]    The State of California, by and through CalPERS, has standing to assert that section 903 operates to limit the actions of a chapter 9 debtor.  *See* 6 COLLIER ON BANKRUPTCY § 903.02[3] (15th rev. ed. 2007) (citing *In re County of Orange*, 179 B.R. 185 (Bankr. C.D. Cal.) *aff'd in part, rev'd in part, remanded* 189 B.R. 499 (C.D. Cal. 1995)).

to the judgment. Restatement (Second) of Judgments § 27; *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988); *see also In re Paine*, 283 B.R. at 39.

Here, all of the prerequisites for claim or issue preclusion do not exist. The City's Motion seeks to reject its CBAs with the Unions, and CalPERS and the Unions are not the same parties nor are they in privity with each other as is required for claim preclusion. For that reason alone, claim preclusion would not apply.

Importantly, the Motion does not raise the same claim, cause of action or issue that a hypothetical 11 U.S.C. § 365 motion to reject the CalPERS Contracts would involve. The Motion contends that the seminal case of *NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1983) governs the City's authority to reject the CBAs. *Bildisco* was a chapter 11 case. While this distinction may or may not matter as to a proposed rejection of the CBAs in this chapter 9 case, it does matter when examining whether to authorize the rejection of a municipality's contract with a state retirement system because of the constraints of sections 903 and 904 of the Bankruptcy Code. Unlike the labor agreement that was at issue in *Bildisco*, the CalPERS Contracts are contracts between a municipality and a state agency for the administration of benefits promised by the municipality to its public employees, and governed by state law. Due to the disparity of issues and parties, the rejection standards set forth in *Bildisco*, as proposed in the City's Motion, have little if any application to a hypothetical attempt to reject the CalPERS Contracts.

Specifically, sections 903 and 904 in conjunction, curtail the power of the federal court's interference into municipal affairs. Bankruptcy courts may not interfere with the governance or management of a municipal debtor. Section 903, entitled "Reservation of State power to control municipalities" provides,

> This chapter does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality, including expenditures for such exercise, but---
>
> (1) a State law prescribing a method of composition of indebtedness of such municipality may not bind a creditor that does not consent to such composition; and

1    (2) a judgment entered under such a law may not bind a creditor that does not
2             consent to such composition.

3    11 U.S.C. § 903.

4        The purpose of this language is to remove any inference that chapter 9 accomplishes

5    anything more than providing a procedure under which municipalities may adjust their debts.  6

6    COLLIER ON BANKRUPTCY § 903.02[1] (15th rev. ed. 2007).   The structure and substance of

7    chapter 9 support the proposition that by enacting chapter 9 Congress did not intend to interfere

8    with a state's control over its municipalities.  *See e.g.*, 11 U.S.C. § 943(b)(4) (prohibiting

9    confirmation if a plan proposes any action that the debtor is prohibited from taking under

10    applicable law); § 943(b)(6) (court's power to confirm a plan does not override any power of

11    electorate to veto action proposed to be taken if the electorate would have a veto outside of

12    chapter 9); and § 944(b)(3) (requiring court to determine that any securities issued under a plan

13    are in compliance with state law).  By enacting section 903, Congress intended to "negate any

14    inference that any other provision of chapter 9, or any other provision of the Bankruptcy Code

15    made applicable in chapter 9, in any way interfered with a state's control over its municipalities."

16    6 COLLIER ON BANKRUPTCY § 903.02[1] (15th rev. ed. 2007); *see also Ropico, Inc. v. City of*

17    *New York*, 425 F. Supp. 970, 983 (S.D.N.Y. 1976) (reviewing section 83 of Chapter IX of the

18    Bankruptcy Act, from which section 903 is derived, and noting that while the Supreme Court has

19    invalidated state laws which were found to conflict with the Bankruptcy Act, it has also in other

20    cases sustained provisions affecting the bankruptcy power where the state laws were not directly

21    in conflict with the Bankruptcy Act).

22        Section 904 works with section 903 to ensure the constitutionality of chapter 9 in light of

23    the Tenth Amendment.  *In re Sanitary and Improvement Dist.*, 98 B.R. 970, 972 (Bankr. D. Neb.

24    1989).  However, while section 903 prohibits a bankruptcy court from interfering with a state's

25    control over its municipality, section 904 sets forth limits on the court's ability to interfere with

26    the municipality itself.  6 COLLIER ON BANKRUPTCY § 904.01 (15th rev. ed. 2007).   One

27    exception to the limitation in section 904 is that the municipality can consent.  But, such consent

28    cannot run afoul of section 903.  6 COLLIER ON BANKRUPTCY § 904.02[1][a] (15th rev. ed. 2007).

Public employee benefit plans established by state and local governments exhibit a "governmental nature," and necessarily implicate state sovereignty which the federal government should not interfere with.[11] *See Feinstein v. Lewis*, 477 F. Supp. at 1261-62 (adding that public benefit plans established pursuant to collective bargaining are still governmental plans); *Pierson v. Continental Casualty Co.*, 2000 U.S. Dist. LEXIS 21380, *43 (C.D. Cal. 2000). The Tenth Amendment and sections 903 and 904 prohibit a chapter 9 debtor from exercising executory contract rejection rights under the Bankruptcy Code against a municipality's contracts with a state agency without reference to applicable state law.

Sections 903 and 904 are relevant here to the extent the City is implicitly seeking in its Motion, or may seek in the future, to reject the CalPERS Contracts. There are several areas where the State of California has elected to control its municipalities through legislation that applies to the City and the CalPERS Contracts, resulting in the prohibition of the exercise of executory contract rejection rights against the CalPERS Contracts. First, California law specifically addresses a municipality's ability to terminate a CalPERS retirement plan contract. Government Code § 20570 requires the municipality to adopt a resolution to terminate the contract, but such termination is not effective for one year. Cal. Gov't Code § 20570. Second, California law specifically addresses a municipality's ability to terminate a CalPERS health benefits contract. Title 2 of the California Code of Regulations § 599.515(e), provides that a municipality must adopt and file a resolution no later than 60 days after CalPERS publishes its yearly announcement of health plan rates. If the municipality does elect to terminate, the termination, by operation of law, becomes effective at the end of the contract year. 2 CCR § 599.515(e). Finally, Government Code § 20487 expressly prohibits the unilateral rejection of an executory contract with CalPERS by a municipality in a chapter 9 case.

Each of the above California statutes are examples of what sections 903 and 904 were intended to preserve for the state. The distinction is that the relevant statutes deal with the relationship between a state agency, here CalPERS, and the state's municipality, here the City.

---

[11]  The level of state pension regulation widely varies from state to state, with some states having more comprehensive systems, while others have embodied constitutional principles. *See e.g., Alley v. Resolution Trust Corp.*, 299 U.S. App. D.C. 363 (1993). Hence, the legal standards to be applied to state pension plans will differ.

By legislation, California has elected to require certain procedures for termination of the CalPERS Contracts. Section 903 prohibits the Court from setting aside those statutes. Nor can the City elect to have the Court interfere with the State's control of its municipality through section 904. Thus, in the event the City seeks to terminate the CalPERS Contracts, it must comply with California Government Code § 20570 and Title 2 of the California Code of Regulations § 599.515(e).

## CONCLUSION

For the reasons stated above, rejection of the CBAs by the City, if authorized by the Court, cannot operate as an implicit rejection of the CalPERS Contracts. In the event that the Court authorizes rejection of the CBAs, any rulings made by the Court do not apply to any subsequent attempt by the City to reject the CalPERS Contracts to the extent they constitute executory contractual obligations. Rejection of the CBAs does not relieve the City of its statutory funding and termination obligations for the CalPERS Contracts.

Dated: December 11, 2008

FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP


By: ___/s/ Steven H. Felderstein___
STEVEN H. FELDERSTEIN
Attorneys for the California Public Employees
Retirement System