FILED

MAR 2 2009

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

|  |  |
|---|---|
| In re | Case No. 08-26813-A-9 |
| CITY OF VALLEJO, | Docket Control No. FBM-2 |
| Debtor. | Date: Feb. 23, 2009<br>Time: 9:00 a.m. |

**MEMORANDUM**

The International Association of Firefighters Local 1186 (IAFF) seeks a declaration that the automatic stay does not prevent it from pursuing a safety grievance against the City of Vallejo for its unilateral reduction in staffing levels, allegedly in violation of a collective bargaining agreement (CBA) as interpreted by a Memorandum of Understanding as well as prior arbitration awards.

If the automatic stay is applicable, the IAFF seeks relief from it in order to pursue its grievance.  It maintains there is cause to modify the automatic stay because: (1) noncore claims must be arbitrated when a contract requires arbitration; (2) the grievance was previously arbitrated and the resulting award in favor of the IAFF will have a preclusive effect; (3) the City may

1    not make unilateral changes to the CBA prior to a court-approved

2    rejection of it; and (4) even if the City is allowed to reject

3    the CBA, this motion is not moot because the City must still

4    abide by the terms of the CBA until a new collective bargaining

5    agreement is put in place.

6        The motion will be denied without prejudice.

7        In part, the IAFF is seeking declaratory relief.  It wants

8    this court to declare that the automatic stay is not applicable

9    to the prosecution of its grievance in a nonbankruptcy forum.

10    While declaratory relief arguably requires an adversary

11    proceeding (see Fed. R. Bankr. P. 7001(7), (9)),  the IAFF also

12    argues that if the automatic stay is applicable there is cause to

13    modify it.  Relief from the automatic stay does not require an

14    adversary proceeding.  When presented with a motion for such

15    relief, the court must conclude first that the automatic stay is

16    applicable and then determine whether there is cause to modify

17    it.

18        The automatic stay protects a debtor from the prosecution of

19    any action based on a breach of a pre-petition contract, such as

20    the CBA.  Section 362(a)(3) protects a debtor from "any act . . .

21    to exercise control over property of the estate."  See 11 U.S.C.

22    § 362(a)(3).  The object of the grievance proceeding would be to

23    compel the City to comply with safety and workload truck staffing

24    standards.  This conceivably would force the City to expend money

25    to place more firefighters on duty and therefore has the

26    potential to exert control over property of the estate.

27        The IAFF argues that a 2007 arbitration between the parties,

28    determining that the City cannot staff fire trucks with only

three firefighters, will have a preclusive effect in any new
grievance. If this is correct, a new grievance is unnecessary.
The only conceivable reason to go forward with one would be to
force the City to place more firefighters on duty and comply with
the 2007 arbitration award.  This would be "exerc[ising] control
over property of the estate."

The IAFF argues that the automatic stay does not apply to
post-petition breaches of an agreement.  It cites three cases in
support of this, In re Miller, 262 B.R. 499 (B.A.P. 9th Cir.
2001), Bellini Imports, Ltd. v. The Mason and Dixon Lines, Inc.,
944 F.2d 199 (4th Cir. 1991), and Fed. Aviation Admin. v. Gull
Air, Inc. (In re Gull Air, Inc.), 890 F.2d 1255 (1st Cir. 1989).
However, none of the cases are dispositive.

In Miller, the court held that the automatic stay does not
apply to discovery pertaining to the claims of non-debtor parties
and that such discovery is not an action or proceeding against
the debtor for purposes of section 362(a).  Miller, 262 B.R. at
505-06.  The creditor propounding the discovery in that case had
issued third-party witness subpoenas to the debtor, tailored to
apply only to the creditor's claims against the debtor's non-
filing spouse.  When the debtor did not comply with the
subpoenas, the creditor moved to compel compliance and sought
sanctions for the debtor's noncompliance.  In turn, the debtor
moved for contempt.  Miller, 262 B.R. at 501-02.

This case, though, does not involve discovery and does not
involve discovery pertaining to claims against non-debtor
parties.  It involves the prosecution of a grievance and/or the
enforcement of a prior arbitration award against the debtor.

-3-

In *Bellini*, the creditor prosecuted a post-petition action and obtained a default judgment against the debtor for a post-petition breach of a hauling contract.  The creditor then attempted to satisfy the judgment from property of the estate. Although *Bellini* held that the automatic stay does not bar an action arising out of an alleged post-petition breach of contract by the debtor, the court did not allow the creditor to enforce its judgment against the estate and its property.  *Bellini*, 944 F.2d at 201-02.

In other words, while the action against the debtor to liquidate the claim was not subject to the automatic stay, the stay still precluded the enforcement of the resulting judgment against the bankruptcy estate.

Here, as mentioned above, given the prior ruling in favor of the IAFF, and given its position that this ruling precludes relitigation of the grievance issue, the only thing to be accomplished by granting the motion would to be force the City to comply with the prior arbitration award.  Under *Bellini*, this is subject to the automatic stay.  *Bellini*, 944 F.2d at 201-02.

Neither does *Gull* suggest that the IAFF should prevail.  In *Gull*, the court ruled that section 362(a)(1) and (a)(3) did not apply to the Federal Aviation Administration's post-petition withdrawal of arrival/departure slots because the withdrawal did not qualify as an action or proceeding against the debtor.  The slots automatically expired according to the regulations under which the debtor held them.  The slots expired due to the debtor's failure to use them.  This expiration did not require any affirmative act by the FAA.  *Gull*, 890 F.2d at 1261-62, 1263-

-4-

64.

     In contrast to <u>Gull</u>, the IAFF must initiate an action in
order to force the City to staff fire trucks with four rather
than three firefighters.  The IAFF would have to initiate the
procedures outlined in the CBA, which would necessarily include
filing an action to enforce the 2007 arbitration award.

     The CBA is a pre-petition contract.  Any claim based on that
contract, including one created by a post-petition breach, is a
claim arising prior to the filing of the chapter 9 petition.  A
claim arises when the obligation is incurred, not when the
obligation falls due, whether it is due because it has matured or
because the debtor has committed a breach.  Hence, a pre-petition
contract that has not been breached when the bankruptcy petition
is filed nonetheless constitutes a pre-petition unliquidated or
contingent claim against the debtor.  <u>See</u> 11 U.S.C. § 101(5) (a
claim includes any right to payment including those that are
unliquidated or contingent).  <u>Cf</u>. <u>Grady v. A.H. Robins Co., Inc.</u>,
839 F.2d 198 (4th Cir. 1988) (concluding that a claim based on
the pre-petition use of a birth control device arose before the
manufacturer's bankruptcy even though no injury had manifested
itself prior to bankruptcy).

     The IAFF also argues that the City's unilateral abrogation
of the CBA is not protected by the automatic stay because the
court in <u>County of Orange</u> held that the County's unilateral
abrogation of seniority and grievance procedures was improper.
<u>Orange County Employees Ass'n v. County of Orange (In re County</u>
<u>of Orange)</u>, 179 B.R. 177, 184 (1995).  But, the <u>County of Orange</u>
court did not address  whether the automatic stay is applicable.

1    In <u>County of Orange</u>, the debtor unilaterally abrogated
2  seniority and grievance procedures without first requesting
3  rejection of the underlying collective bargaining agreements.
4  Here, on the other hand, the City filed a motion to reject the
5  pre-petition CBA on June 17, 2008, 13 days before it unilaterally
6  reduced staffing levels from 28 to 22 firefighters per shift.
7  Also, the City did not reduce staffing levels on fire truck
8  companies from four to three until December 2, 2008.  <u>See</u> Motion
9  For Relief From Stay at 7.  In other words, the City did not
10  merely alter the terms of the CBA.  It did so only after it had
11  moved for its rejection.
12    Whether there is cause for relief from the automatic stay
13  under section 362(d)(1) is largely dependent on the context of
14  each case.  <u>MacDonald v. MacDonald (In re MacDonald)</u>, 755 F.2d
15  715, 717 (9th Cir. 1985).  Several factors often are considered
16  by courts, including: 1) whether granting relief will interfere
17  with the bankruptcy case; 2) whether the pending litigation
18  involves only state law; 3) the complexity of the issues; 4)
19  judicial economy and efficiency; and 5) prejudice to the parties.
20  <u>MacDonald</u>, 755 F.2d at 717; <u>Robbins v. Robbins (In re Robbins)</u>,
21  964 F.2d 342, 345 (4th Cir. 1992) (citing <u>MacDonald</u>, 755 F.2d at
22  717); <u>Universal Life Church, Inc. v. Untied States (In re</u>
23  <u>Universal Life Church, Inc.)</u>, 127 B.R. 453, 455 (E.D. Cal. 1991);
24  <u>GSB I, LLC v. A Partners, LLC (In re A Partners, LLC)</u>, 344 B.R.
25  114, 127 (Bankr. E.D. Cal. 2006).
26    Modifying the automatic stay for the IAFF to prosecute a
27  grievance to force the City to comply with safety and workload
28  truck staffing standards under the CBA makes little sense at this

point in time because this court is about to rule on whether the debtor may reject the CBA.  The court recognizes that if it does not permit the debtor to reject the pre-petition CBA, the IAFF conceivably might utilize section 7.A. of the MOU to compel the City to arbitrate safety and workload staffing disagreements. And, if the court permits the City to reject the CBA, the parties would have to negotiate a new collective bargaining agreement. During such negotiations, the parties may agree on a process to resolve safety and workload staffing disputes with or without resort to the procedures prescribed by the CBA or applicable law. See Firefighters Local 1186 v. City of Vallejo, 12 Cal. 3d 608, 621-22 (1975) (interpreting the City of Vallejo's charter to require arbitration, absent an agreement, on any decision to reduce the number of firefighters to the extent it affects the working conditions and safety of the remaining firefighters).

Therefore, until it is determined whether the City may reject the CBA, the IAFF may not initiate an arbitration proceeding pursuant to the terms of the CBA to resolve safety and workload staffing disagreements.  The CBA may become obsolete if and when the City is allowed to reject it.

Further, modifying the automatic stay at this time would interfere with the prosecution of the bankruptcy case by all parties because they are in the midst of litigating the City's attempt to reject the CBA.  If it is rejected, the parties will have to negotiate a new CBA.  Moreover, regardless of whether the City is allowed to reject the CBA, the parties should continue to negotiate its modification.

///

1    The IAFF's argument that it must be allowed to exercise a
2    contractual right to arbitrate a noncore claim may be correct if
3    the court does not permit the rejection of the CBA.  But, because
4    the court has not yet decided whether the CBA may be rejected,
5    this argument is premature.

6    The IAFF's argument that the City may not unilaterally alter
7    the terms of the CBA and must abide to the terms of the CBA, both
8    pending its rejection and after rejection until a new agreement
9    is reached, lacks merit.  In the event this court concludes that
10   <u>Bildisco</u> fully applies in this case, the CBA would not be
11   enforceable unless and until the City accepts it.  <u>Bildisco</u> held
12   that "from the filing of a petition in bankruptcy until formal
13   acceptance, the collective-bargaining agreement is not an
14   enforceable contract."  <u>See</u> <u>N.L.R.B. v. Bildisco & Bildisco</u>, 465
15   U.S. 513, 531 (1984).  This would mean that the City would not
16   have to abide to the terms of the CBA, pending its rejection  or
17   after its rejection.

18   The court concludes that no cause exists for the lifting of
19   the stay at this time.  Accordingly, the motion will be denied
20   without prejudice.  A separate order will be entered.

21   Dated: 2 March 2009

22                              By the Court

23

24

                              Michael S. McManus
25                            United States Bankruptcy Judge

26

27

28

                              -8-

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United
States Bankruptcy Court for the Eastern District of California
hereby certifies that a copy of the document to which this
certificate is attached was mailed today to the following
entities listed at the address shown on the attached list or
shown below.

Marc A. Levinson
400 Capitol Mall #3000
Sacramento, CA 95814-4407

Katherine Thomas
1152 15th St NW
Washington, DC 20005-1706

Norman C. Hile
400 Capitol Mall #3000
Sacramento, CA 95814

Kelly A. Woodruff
235 Montgomery St 30th Fl
San Francisco, CA 94104

Dean M. Gloster
235 Montgomery St 30th Fl
San Francisco, CA 94104

Monica Swanson Hunt
235 Montgomery St 17th Fl
San Francisco, CA 94104

Mike C. Buckley
1999 Harrison St #2400
Oakland, CA 94612-3572

Office of the US Trustee
501 I St Ste 7-500
Sacramento, CA 95814

DATED:  3/3/09                    By: _____
                                       Deputy Clerk
                                  BARBARA REYNOLDS

EDC 3-070 (New 4/21/00)