

FILED

MAR 13 2009

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re<br>CITY OF VALLEJO,<br>   Debtor. | Case No. 08-26813-A-9<br>Docket Control No. OHS-4 |

**MEMORANDUM**

On June 17, 2008, the City of Vallejo filed a Motion for Approval of Rejection of Collective Bargaining Agreements. The collective bargaining agreements (CBAs) affected by the motion are between the City and the Vallejo Police Officers Association ("VPOA"), the International Association of Firefighters, Local 1186 ("IAFF"), the International Brotherhood of Electrical Workers, Local 2376 ("IBEW"), and the Confidential, Administrative, Managerial and Professional Association of Vallejo ("CAMP").

VPOA, IAFF, and IBEW filed opposition to the motion, as did the California Public Employees' Retirement System ("CalPERS"), the California Labor Federation, AFL-CIO ("California Labor

Federation"), and the Official Unsecured Creditors Committee of Retirees ("Retirees' Committee").

The court commenced an evidentiary hearing on February 3, 2009 and concluded it on February 10, 2009. Marc A. Levinson, Norman C. Hile and Michael Weed appeared for the City. Kelly A. Woodruff, Dean M. Gloster, Laura Roche, and Racheal Turner appeared for IAFF and IBEW. Steven H. Felderstein and Joan S. Huh appeared for CalPERS. R. Dale Ginter appeared for the Retirees' Committee. Donald C. Carroll appeared for California Labor Federation. Robert Kaplan and Nicolas DeLancie appeared for creditor Union Bank. Mike C. Buckley appeared for creditor Wells Fargo Bank.

On January 27, 2009, the Vallejo City Council approved a supplemental agreement between the City and VPOA. At the evidentiary hearing, the City voluntarily dismissed the motion with respect to VPOA.

On January 30, 2009, CAMP approved a proposed supplemental agreement with the City. On February 10, 2009, the City Council approved the supplemental agreement, and the City then voluntarily dismissed the motion as to CAMP.

Consequently, the motion before the court seeks to reject only the CBAs between the City and the IAFF and the IBEW.

I

This Memorandum addresses whether chapter 9 of the Bankruptcy Code permits a municipality to reject collective bargaining agreements with its public employee unions.

///

## A

The United States Constitution authorizes Congress to enact uniform bankruptcy laws. U.S. Const. art. 1, § 8, cl. 4. By virtue of the Supremacy Clause, federal laws are the supreme law of the land, notwithstanding state laws to the contrary. U.S. Const. art. VI, cl. 2.

The Constitution also reserves certain powers to the states. The Tenth Amendment provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

To harmonize these two competing interests - reservation of powers to the states and the supremacy of federal bankruptcy law - Congress enacted 11 U.S.C. § 903. Section 903 provides, in relevant part:

> This chapter does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality . . . ."

11 U.S.C. § 903.

Section 903 ensures the constitutionality of chapter 9, but does not provide an independent substantive limit on the application of chapter 9 provisions. As explained in 6 *Collier on Bankruptcy* ¶ 903.02[2] (Alan N. Resnick and Henry J. Sommer eds. 15th ed. rev.):

> As a constitutional shield for chapter 9, the introductory language of section 903 has no general relevance to the interpretation or application of any of the specific substantive provisions of chapter 9. Indeed, unlike section 904, section 903 does not act as an independent substantive limitation on actions of the bankruptcy court in applying the provisions of chapter

| | |
|---|---|
| 1 | 9 . . . ." |
| 2 | <u>Id</u>. at ¶ 901.09[9][a]. <u>See also</u> Ryan Preston Dahl, "Collective |
| 3 | Bargaining Agreements and Chapter 9 Bankruptcy," 81 <u>Am. Bankr.</u> |
| 4 | <u>L.J.</u> 295, 329-338 (Summer 2007) (noting that "constitutional |
| 5 | guarantees of state sovereignty are not violated by a municipal |
| 6 | debtor's independent exercise of bankruptcy-specific rights."). |
| 7 | Section 903, together with 11 U.S.C. § 109(c)(2), allows |
| 8 | states to act as gatekeepers to their municipalities' access to |
| 9 | relief under the Bankruptcy Code. When a state authorizes its |
| 10 | municipalities to file a chapter 9 petition it declares that the |
| 11 | benefits of chapter 9 are more important than state control over |
| 12 | its municipalities. |
| 13 | Therefore, "[b]y authorizing the use of chapter 9 by its |
| 14 | municipalities, California must accept chapter 9 in its totality; |
| 15 | it cannot cherry pick what it likes while disregarding the rest." |
| 16 | <u>In re County of Orange</u>, 191 B.R. 1005, 1021 (Bankr. C.D. Cal. |
| 17 | 1995) ("<u>Orange County III</u>"); <u>see also</u> <i>Collier</i>, at ¶ 903.02[4]. |
| 18 | Consequently, if a municipality is authorized by the state |
| 19 | to file a chapter 9 petition, it is entitled to fully utilize 11 |
| 20 | U.S.C. § 365 to accept or reject its executory contracts. <u>See</u> 11 |
| 21 | U.S.C. § 901 (making section 365 fully applicable in chapter 9 |
| 22 | cases). <u>See also</u> 81 <u>Am. Bankr. L.J.</u> at 333 ("Any attempt to |
| 23 | limit a debtor's rights under § 365 through recourse to state |
| 24 | sovereignty must also be weighed against the filing requirements |
| 25 | unique to Chapter 9. . . . Since the state must consent to a |
| 26 | bankruptcy filing under § 109(c)(2), the state consents to the |
| 27 | displacement of its own law in order to obtain the benefits |
| 28 | uniquely available under the Bankruptcy Code."); <u>cf</u>. <u>In re County</u> |

-4-

of Orange, 179 B.R. 185, 191 (Bankr. C.D. Cal. 1995) ("<u>Orange County II</u>") (discussing relationship between Sections 362 and 903).

B

The California statute authorizing its municipalities to file bankruptcy petitions provides: "Except as otherwise provided by statute, a local public entity in this state may file a petition and exercise powers pursuant to applicable federal bankruptcy law." Cal. Gov't Code § 53760. "This section is intended to provide the <u>broadest possible state authorization for municipal bankruptcy proceedings</u>, and thus provides the specific state law authorization for municipal bankruptcy filing required under federal law." Cal. Gov't Code § 53760 (Law Revision Comm'n Comments, 2002 Addition) (emphasis added).

With respect to the prefatory phrase, "Except as otherwise provided by statute," in section 53760, neither it nor any other California law imposes pre-filing limitations or post-filing restrictions requiring compliance with, or making applicable, public sector labor laws. The 2002 Comments to section 53760 identify various California statutes that do impose such limitations, and state labor law is not among them:

> As recognized in the introductory clause of subdivision (a), this broad grant of authority is subject to specific limitations provided by statute. <u>See</u>, <u>e.g.</u>, Ins. Code § 10089.21 (California Earthquake Authority precluded from resort to bankruptcy); Sts. & Hy. Code § 9011 (prerequisites to bankruptcy filing under Improvement Bond Act of 1915). <u>See also</u> Educ. Code § 41325 (control of insolvent school district by Superintendent of Public Instruction); Health & Safety Code § 129173 (health care district trusteeship).

Cal. Gov't Code § 53760 (Law Revision Comm'n Comments, 2002 Addition).

### C

Assuming for sake of argument that California law superimposes its labor laws onto section 365, such law would be unconstitutional. As noted above, only the federal government may enact uniform bankruptcy laws. U.S. Const. art. 1, § 8, cl. 4. "[I]ncorporat[ing] state substantive law into chapter 9 to amend, modify or negate substantive provisions of chapter 9 would violate Congress' ability to enact uniform bankruptcy laws." *Collier*, at ¶ 903.01; see also Cent. Va. Cmty. Coll. v. Katz, 546 U.S. 356 (2006); 81 Am. Bankr. L.J. at 334 ("'[U]niform nature of federal bankruptcy power may preempt objections to the application of bankruptcy law predicated on state sovereignty."); Randolph J. Haines, "The Uniformity Power: Why Bankruptcy is Different," 77 Am. Bankr. L.J. 129, 174 (2003) ("[T]he power granted to Congress by the Framers did not merely override the states' reserved legislative authority, as did the Supremacy Clause, but completely alienated . . . all of the states' sovereignty with respect to that body of law.").

The Supremacy Clause invalidates state laws that '"interfere with or are contrary to federal law.'" U.S. Const. art VI, cl. 2; Baker & Drake, Inc. v. Pub. Serv. Comm'n of Nev., 35 F.3d 1348, 1352 (9th Cir. 1994) (citing Gibbons v. Ogden, 22 U.S. 1, 211 (1824)).

Under the Contracts Clause, modification of contracts is within the exclusive province of the federal government. U.S.

Const. art. VI; see Cont'l Illinois Nat'l Bank & Trust Co. v. Chicago, R.I. & P. Ry. Co., 294 U.S. 648, 680-81 (1935).

In the exercise of this exclusive power, Congress enacted section 365 to provide debtors the authority to reject executory contracts. 11 U.S.C. § 365(a). This authority preempts state law by virtue of the Supremacy Clause, the Bankruptcy Clause, and the Contracts Clause. U.S. Const. art. 1, § 8, cl. 4; U.S. Const., art. VI, cl. 2; U.S. Const., art. IV.

Therefore, the court must reject the assertion that Sonoma County Organization of Public Employees v. County of Sonoma, 23 Cal. 3d 296 (1979), or any state labor law, provides the applicable standard controlling the rejection of the City's collective bargaining agreements.

Where a state law "unduly impede[s] the operation of federal bankruptcy policy, the state law [will] have to yield." Perez v. Campbell, 402 U.S. 637, 649 (1971); Sherwood Partners Inc. v. Lycos, Inc., 394 F.3d 1198, 1203 (9th Cir. 2005).

Sonoma, state labor law applicable outside of the bankruptcy context, and the contracts clause of the California Constitution, Article I, Section 9, do not apply to the City's rejection of its collective bargaining agreements because they conflict with section 365 and the Bankruptcy Code. They are preempted. U.S. Const. art. 1, § 8, cl. 4; art. VI, cl. 2; art. IV.

D

Unexpired collective bargaining agreements are executory contracts subject to rejection under section 365. See N.L.R.B. v. Bildisco & Bildisco, 456 U.S. 513, 521-22 (1984). Congress

-7-

incorporated section 365 into chapter 9 without restricting or limiting its application to collective bargaining agreements. See Bildisco, 465 U.S. at 522 (discussing the types of other agreements excluded from section 365, and concluding that labor agreements are executory contracts that can be rejected).

Congress enacted 11 U.S.C. § 1113 following the Supreme Court's decision in Bildisco. See In Re County of Orange, 179 B.R. 177, 182 (Bankr. C.D. Cal. 1995) ("Orange County I"). Section 1113 applies in chapter 11 cases and imposes on chapter 11 debtors procedural and substantive requirements that must be met prior to rejection of collective bargaining agreements.

Section 1113, however, is not incorporated into chapter 9. See 11 U.S.C. § 901(a); Orange County I, 179 B.R. at 181 n.8.

Therefore, section 1113 is not applicable in chapter 9 cases, and a chapter 9 debtor is not required to comply with it in order to reject an executory collective bargaining agreement. See Orange County I, 179 B.R. at 183 ("Given this history, I conclude that Bildisco applies in Chapter 9 since Congress has had numerous opportunities to limit its effect by incorporating § 1113 into Chapter 9."); Collier, at ¶ 901.04[9][a].

In 1991, Congress considered adding a provision to chapter 9 to require a municipal debtor to exhaust state labor law procedures prior to rejecting a collective bargaining agreement. See Orange County I, 179 B.R. at 182-83; The Municipal Employee Protection Amendments of 1991, H.R. 3949, 102d Cong., 1st Sess. (1991).[1] The proposed statute provided: "The debtor which seeks

---

[1] The Municipal Employee Protection Amendments of 1991, H.R. 3949, 102d Cong., 1st Sess. (1991), were introduced as House

approval of changes to a labor agreement [must first exhaust all] state law procedures for the bargaining, implementation, and amendment of a collective bargaining agreement." <u>Orange County I</u>, 179 B.R. at 183 n.15.

Congress, however, did not enact this proposed amendment to the Bankruptcy Code. And, this court will not presume to do what Congress has not done, whether by incorporating section 1113-like provisions into chapter 9, or by requiring compliance with state labor law.

F

As established by the Supreme Court in <u>Bildisco</u>, a debtor may utilize section 365 to reject an unexpired collective bargaining agreement if the debtor shows that: (1) the collective bargaining agreement burdens the estate;[2] (2) after careful scrutiny, the equities balance in favor of contract rejection; and (3) "reasonable efforts to negotiate a voluntary modification have been made, and are not likely to produce a prompt and satisfactory solution." <u>Bildisco</u>, 456 U.S. at 526. The debtor has the burden of establishing that these factors have been satisfied. <u>Id</u>.

---

Resolution 3949 by Representative Howard L. Berman on November 26, 1991. Among its legislative goals was the "contemplated enact[ment of] a "§ 1113-like" statute for chapter 9. <u>See</u> <u>Orange County I</u>, 179 B.R. at 183 n.15. The bill died in committee. <u>Id</u>.

[2] In a chapter 9 case there is no "estate." Thus, a municipal debtor must demonstrate that the collective bargaining agreement burdens its ability to reorganize by proposing and implementing a viable plan of adjustment. <u>Bildisco</u>, 456 U.S. at 525-26.

## II

Despite having concluded that the City may potentially reject the remaining CBAs, the court will defer determining whether the City has satisfied the Bildisco standard for their rejection for two reasons.

The court was advised several times at the evidentiary hearing on the motion, and again at the hearing on a related motion by IAFF for relief from the automatic stay, that negotiations between the City, IAFF, and IBEW were ongoing. The court wishes to give the parties every reasonable opportunity to settle this motion. Given the settlements with two of the unions, the court wishes to do give the City and the remaining two unions every reasonable opportunity to come to terms. After all, Bildisco permits the City to reject the CBAs only if negotiation is unlikely to produce a prompt and satisfactory solution.

Also, in the court's findings and conclusions concerning the City's eligibility for chapter 9 relief, the court noted that the City had over 100 special purpose and enterprise funds with cash and investments totaling approximately $136 million. The Unions maintained that these funds could be tapped by the City to solve its financial problems. The court concluded that the cash and investments in these funds were not available to cover the operating expenses of the City's General Fund.

Nonetheless, in connection with the hearing on this motion, the City's evidence indicated that some of its labor costs are apportioned to some of these funds.

The court would like further evidence and authority concerning the apportionment of these labor costs. For instance:
- Which funds are apportioned these costs?
- How much of the City's labor costs are borne by the General Fund as opposed to one of the other funds?
- Under what authority are labor costs shifted from the General Fund to the other funds?
- Are any of the other funds not paying for labor costs that should be borne by them under applicable contract or authority?

Therefore, the court will conduct a brief status conference on March 23, 2009 at 1:30 p.m. Counsel may appear in person or by telephone. At the conference, the court wishes to be updated on the status of negotiations between the parties and, assuming there is no compromise, to discuss reopening the record so that the parties may address the court's additional questions.

Dated: 13 March 2009

By the Court

Michael S. McManus
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

| | | |
|---|---|---|
| Marc A. Levinson<br>400 Capitol Mall #3000<br>Sacramento, CA 95814-4407 | Norman C. Hile<br>400 Capitol Mall #3000<br>Sacramento, CA 95814-4407 | Kelly A. Woodruff<br>235 Montgomery St 30th Fl<br>San Francisco, CA 94104 |
| Steven H. Felderstein<br>400 Capitol Mall #1450<br>Sacramento, CA 95814-4434 | R. Dale Ginter<br>621 Capitol Mall 18th Fl<br>Sacramento CA 95814 | Donald Carroll<br>300 Montgomery St #735<br>San Francisco CA 94104 |
| Robert Kaplan<br>2 Embarcadero Center 5th Fl<br>San Francisco CA 94111 | Mike C. Buckley<br>1999 Harrison St #2400<br>Oakland CA 94612-3572 | |

DATED: 3/13/09        By: _____
                           Deputy Clerk

EDC 3-070 (New 4/21/00)